A deciding officer gave the country's last word in Mr. Avalos' immigration case. That officer was in your carbon copy of the officer and he unilaterally issued a final decision in an administrative adjudication. So he was subject to the appointments clause and this court should remand for the district court to consider the remaining prongs of 13-2060 in the first instance. So I'd like to begin with the significant authority deciding officers have. Could you begin with the continuing impermanent office because we have cases saying it has to be set out by statute or regulation and the deciding officer is not? So deciding officers' roles are clarified in 8 CFR 238.1D. This court has also said BIA officers, similarly, their role is set out only by regulation, not statute. But that is sufficient to establish continuing duties. So to go to what those duties are under the regulation, deciding officers decide someone's citizenship, including derivative citizenship claims, which get real complicated real fast. So the deciding officer is sort of a random employee, right? That's in 238.1A. And there's no permanent deciding officer, deciding service officer role. That's what stopped me. It says deciding service officer is the district director, chief patrol agent, other immigration officer. There's nothing that says that's a salary term, duties, emoluments, all of the things that our cases have said are required for an inferior officer. So the government largely did not make that argument. It makes one argument just as far as I understand it stating the regulation is insufficient. It needs to be established by statute, which this court has held otherwise. But I will say it does establish duties pretty extensively. And the Supreme Court's recent case in Kennedy v. Braidwood, that case established that volunteers to the task force there were still sufficient to be officers, even though they weren't getting paid. But their duties were established by statute. And that is why their role was continuing. So when it comes to what those duties are, not only do they decide citizenship, they decide specific immigration status, they decide the conviction as a factual matter, and then they decide whether the conviction is an aggravated felony as a legal matter. They decide extensions under the regulation. They can decide bond under the regulation. And then taking all this information to account, if they need additional evidence, they can go out and get it. They can obtain additional evidence from any source, including the alien. And then they issue orders like the one in this case that contains, quote, findings of fact and conclusions of law. So for that reason, they do have significant authority, just like the officers in Nishimura, IQ. But I mean, if you look at our other cases that discuss officer, you know, Frey, Tag, Lucia, you know, and our circuit, Duenas, you know, they involved ALJs that held trials or, you know, full extensive appellate proceedings. Here, the deciding officer really decides on a very small, discrete issue. And for the most part, admittedly, there may be some edge cases, but for the most part, it's almost ministerial. Very easy, just, you know, a matter of fact. You can resolve it very quickly. So it does seem like you're trying to extend that beyond what, you know, the case law has established about significant authority. Respectfully, Your Honor, deciding whether a conviction is an aggravated felony is not clear-cut. It is. There are some cases we get those, but for the most part, it's pretty straightforward. And probably 90, you know, whatever, you know, plus percent of the cases, a pretty straightforward determination for a deciding officer. I would point, Your Honor, in two directions. The first is to independent counsel in Morrison. So there, the independent counsel was empowered to perform, quote, certain limited duties, limited in jurisdiction, limited in tenure, but they made final decisions on those. I know the majority, but, you know, everyone now looks at the dissent, and dissent points out that it's, you know, it's not limited jurisdiction. It's, you know, vastly more powerful than what the majority is characterized as, so. But of course, this Court is subject to the majority opinion. And I'd also point this Court to Nishimura Ekiu. The immigration inspector there decided a very narrow set of removal grounds. The inspector had the power to put people under oath, but didn't in that case, had the power to collect additional evidence, but didn't. It was a simple public charge case. And this Court, or sorry, the Supreme Court said the case turned on the validity and effect of the inspector as an inspector, and said because his appointment was not illegal under Constitution Article 2, Section 2, that the inspector of immigration was duly appointed. It is very hard to differentiate this inspector here with limited number of grounds, with the potential to do evidentiary work, but no need to in many cases. Distinguish them as an inferior officer. And I'll say despite all of the recent case law and sort of a reinvigoration of the Appointments Clause when it comes to ALJs, ALJs are not the only inferior officers in the vast executive branch. And the Supreme Court has said that it puts significant weight on historical practice. So that's why Nishimura Ekiu is really relevant. I want to make sure I hit fundamental unfairness. I think that's the other major contested issue in this case, unless this Court has any other questions. So I'll point out that it's fundamentally unfair to be adjudicated by someone without any authority under Article 2. SELA law says a litigant challenging governmental action as void on the basis of separation of powers is not required to prove that the government's course of conduct would have been different in a counterfactual world. Now, we're in a different situation than a direct appeal, right? We're in 1326D. But even under AEDPA, fundamentally unfair errors are not reviewed for prejudice. AEDPA is, I think, a higher bar than 1326D because there have been so many courts adjudicating the issue. But even still, this Court has held en banc that when an error is structural, it is not subject to harmless error review of any kind, even in habeas proceedings. I'll say Mendoza-Lopez left open that some errors necessarily render a trial fundamentally unfair, even without a showing of prejudice, like adjudication by a biased judge. And Pro Corte's similarly held that there may be circumstances in which some errors are so fundamentally unfair, a showing of prejudice can't be made. It's hard on these facts to find fundamental unfairness in a different sense, isn't it? I mean, there's little doubt that, or is there serious doubt? What doubt is there about whether his underlying conviction was an aggravated felony? So this Court's case law says it was, right? And there's nothing in this record to show relief like cat relief or other forms of relief, although those are available in administrative removal. But some fundamental unfairness comes not from the possibility of a change in outcome, but from fundamental separation of powers problems. Appointments clause remedies are supposed to have bite. They're designed to create incentives to raise appointments clause remedies. Well, it's not meant to be gotcha. No. And as you emphasize, fundamental fairness is kind of the underlying question here, and it's hard to find fundamental unfairness here, given that he would, I think, be found by anybody making the determination to have previously been convicted of an aggravated felony. So here's an analogy. If somebody confesses to a crime and there are 20 eyewitnesses, public street, says, this guy definitely did it. If at his trial, he's adjudicated by a biased judge, he shows fundamental unfairness, even though no person in their right mind would look at that record and go, well, maybe he didn't do it. The same holds true when it comes to adjudicating without Article II authority. It's a really important basic separation of powers issue that comes to the president being able to control this huge bureaucracy. Is that the same sort of structural error that's a biased judge? Yes. A biased judge is a structural error. But is your appointment clause violation the same sort of structural error? Well, it's fundamentally under a different part of the Constitution, but I would say, yes, it's a structural error. Is there a case that says that? Yeah, the DC Circuit has said that at Landry. There's certainly no rule that a party claiming constitutional error must show a direct causal link between the error and the authority's adverse decision. I don't know that the government in their briefs even really objects to the issue being structural. It just objects to how you raise structural arguments in the context of 1326D. You want to save some time for rebuttal? Yeah, I'll save the remainder of my time for rebuttal. Thank you. We'll hear from the government. Good morning. May it please the Court. Zach Howe on behalf of the United States. Judge Ikuda, let me start where you started, which is this question of continuing in permanent employment. I think what sets this case apart from the situation of an IJ or a BIA judge is that an IJ or a BIA judge, that's a full-time job. They're not moonlighting, making arrests, or something like that. But Judge Ikuda, as you note, the regulation governing deciding officers is very self-consciously taking from pre-existing positions. So it mentions a district director, a chief patrol officer, or someone that they designate. Well, a chief patrol officer, that's an existing position with existing duties. So the regulation is contemplating that someone could act as a deciding officer one day and not the next. Maybe they won't act as a deciding officer again for a week or a month or a year. So I do think it's hard to categorize this as a continuing and permanent position just by the very way that the regulation is written. But in Kennedy v. Braidwood, the Court at least assumed, I don't think it was really at issue, the issue was really principal v. inferior officer, but the Court assumed that people in this HHS task force were officers. I think that's correct, but there, as I read it at least, these are dedicated HHS task force officers who remain task force officers for the duration of their term, and they're continually giving out these recommendations that then become covered in insurance. It's not a changing position where they stop being a task force officer for some period of time, as I read it at least. That's not the case for these deciding officers, because again, it's existing positions that can be doing other things. Maybe they'll be a deciding officer day in and day out, but under the regulations, they very well could be a deciding officer one day and not the next. But even if you look to the other prong for inferior officers, significant authority, deciding officers don't exercise either significant procedural or substantive authority. I'll start with procedural, I think that one's relatively straightforward. Unlike an IJ, unlike an SEC ALJ, unlike a special trial judge, a deciding officer is not holding a trial, they're not taking testimony, they're not examining witnesses, they're not enforcing compliance with discovery orders or issuing sanctions or anything like that. They are deciding cases by looking at the issuing officer's filing and supporting evidence and a written response. So this court has described them as summary proceedings before, and that's really what they are. It's meant to be decided on the papers. In fact, I point out in my answering brief that I'm not aware of an instance in which a hearing has ever been held in an administrative removal proceeding. And my friend on the other side doesn't point to any example of that taking place. So procedurally, this is night and day between a deciding officer and an IJ or other positions. In assessing significant authority, should we consider the fact that the deciding officer's decision is final? Is that a factor we should consider? It's absolutely a factor you should consider. I certainly agree with my friend on the other side on that. But it is not the end-all be-all of inferior officer status. We point to a few examples of instances where officials have had final authority and yet have not been deemed inferior officers. One is the Offmort v. Hedden case from 1890 where the Supreme Court held that merchant appraisers were not inferior officers even though they made final assessments on the value of goods subject to tariffs. Another is the Tucker v. C.I.R. case from the D.C. Circuit where it held that IRS Office of Appeals officials were not inferior officers even though they had final say over certain tax matters. One more I can add to the mix. My friend on the other side cites the 2025 memorandum from the OLC on the Appointments Clause. If you look at page 16 of that memorandum, it cites as an example line federal agents or prosecutors and says that they might not be inferior officers. The example it gives is the Steele v. United States case from the Supreme Court where Chief Justice Taft concluded that Deputy U.S. Marshals were not inferior officers even though they have powers to execute warrants, enforce the laws, execute writs, things of that nature. So finality is certainly not the end-all be-all. You have to look at the significance of the authority, the discretion exercised, and here those things set deciding officers apart from all of the other positions the courts upheld to be inferior officers. Unlike an I.J., a deciding officer is not addressing all aliens, they're only addressing non-resident aliens. Unlike an I.J., they're not addressing the full spectrum of removability grounds, they're only addressing aggravated felonies. Unlike an I.J., they're not applying these exemptions from removal grounds with perhaps the exception of if you've been pardoned for your crime. They really are just asking if you've been convicted of an aggravated felony. And then they also, unlike an I.J., are not applying any grounds for relief from removal, they're not authorized to do that. Now given my duty of candor to the court, I will never claim that the categorical approach is an easy thing to apply, but Judge Lee, I think you're right that the hard cases will tend to be a very, very niche area. Misdemeanors are out by definition. Many common crimes are not going to qualify as aggravated felonies. Property crimes, petty theft, immigration offenses. Many crimes will actually be pretty easy to categorize because you don't have to do the categorical approach, they fall within enumerated aggravated felonies. So really that just leaves you with this crime of violence category. And even there, not all cases are going to be hard. Any intentionally violent crime is probably going to qualify. And even in the tough cases, you often have a BIA decision or a court decision on point. So we're talking about a very, very niche category of cases, again, within the singular category of cases that deciding officers are actually able to consider. So I don't think it can be said that that places them on par with an immigration judge or a BIA judge. My friend on the other side says that the ECU case is dispositive here. The ECU case is not dispositive here because it simply did not address the appointments clause. Neither party cited the appointments clause in their briefs. The claim in that case was, in fact, the exact opposite of an appointments clause argument because the alien in that case was saying that the inspector who ordered her removal should have been appointed by a lower level position, not a department head. It's certainly true that the Supreme Court devoted one sentence to the appointments clause, but it simply wasn't necessary for what was ultimately a statutory interpretation question. And that's why no court that I'm aware of has cited ECU as appointments clause authority in the 130 years since it was decided. But as I point out, even if it were binding authority on this court, I think it would help us more than it hurts because the immigration inspectors of 1892 had far more power than the deciding officers here, both procedurally and substantively. Procedurally, they were making the arrest in the first place. They were conducting the investigation and the inspection, which could include a medical examination. So in that sense, they were more like the arresting officer and the issuing officer than the deciding officer. And then even in their deciding powers, they had more procedural powers. The statute expressly contemplated taking testimony, which isn't the case here. And then as to the substantive powers, they were applying the full spectrum of grounds for removal, like, you know, having a certain disease or being a public charge or things beyond just the crime that was committed. So I don't think ECU ultimately helps my friend on the other side here. Maybe just to wrap up this discussion, I think maybe one kind of broader point to make is that the Supreme Court has always conceived of the officer label as being very narrow. So I'll point you to footnote nine from a Free Enterprise Fund case. There, the Supreme Court cites a case from 1879, and that case said that nine-tenths of the person's rendering services to the government undoubtedly would not be officers. And then the Supreme Court goes on to say that the applicable proportion has, of course, increased dramatically since 1879. So by the Supreme Court's own estimation, far less than nine-tenths of officials within the government should be deemed officers. I think if the court here were to conclude that deciding officers were inferior officers, it would be making the exception the rule, because many of the authorities that my friend on the other side relies on are things that are common to almost all federal officers, things like the ability to execute a search warrant or make an arrest or put someone under oath. So I think the court can conclude on the merits that these are not inferior officers. If there are no other questions on that, I'll spend a minute on the final prong, D3, under 1326D. I think it's undisputed here that if Avalos had been placed before an immigration judge, he would have been removed from the country and he would have received no relief from removal. If he had been placed before a deciding officer who had been appointed by the DHS secretary or the attorney general or the president himself, he would have been removed from the country and would have received no relief from removal. He suffered no prejudice from this alleged violation here. Now, the argument my friend on the other side is making is that there's no showing of prejudice necessary because this is structural error. But I simply don't think that's consistent with the text of 1326D, with Palomar-Santiago, or even with other collateral attack contexts. It's not consistent with 1326D because that statute says that you cannot attack the validity of a removal order unless you meet prongs D1, 2, and 3. And Palomar-Santiago has concluded that based on that language, all prongs are, in fact, mandatory. And that has always been interpreted to require a showing of prejudice, even going back to this court's en banc decision in Pro Atovar. The court said there that the only time you wouldn't need to show prejudice is if you were subject to a removal that wouldn't have occurred. And here, that's simply not the case. But then if you want to look at the collateral attack context and other contexts, at page 34 and 35 of our brief, we cite the Martinez case, which is a 2254 case from this court. We cite the Pollard case, which is a 2255 case from this court. Both of those cases said that you have to show prejudice even when you're dealing with a structural error if you're in that collateral attack context. The Pollard case cites the Weaver versus Massachusetts case from the Supreme Court, in which the Supreme Court, in a 2254 case, also held that you have to show prejudice even if it's structural error. There, it was a violation of the right to a public trial, and the court still said that you had to show prejudice. So to the extent that the case my friend on the other side is citing from back in 2008 is inconsistent with that Supreme Court case and is inconsistent with the more recent cases from this court, the court should be applying the Supreme Court's precedent and this court's more recent precedent. So again, I think whether you're looking at the text of the statute, whether you're looking at Palomar-Santiago, whether you're looking at other collateral attack contexts, this court should be concluding that there was no prejudice here and D3 was not satisfied. The only other times I'm aware of that this court has excused prejudice would be Ochoa-Orojel, which dealt with an LPR who was wrongly removed as an aggravated felon. Neither are true here. And Valdivia-Flores, which also dealt with someone wrongly removed as an aggravated felon, which again isn't the case here. And, Judge Lee, you've written in your Gambino-Ruiz concurrence that it may not even be good law on prejudice to begin with. So for all those reasons, I think the court, if it were inclined, can avoid the Appointments Clause issue altogether and simply rule on prejudice. Otherwise, I would ask the court to affirm on the merits. There are no other questions. I'm happy to yield the remainder of my time. All right. Thank you. Thank you. So, Judge Lee, I'll start by answering your question about the role a final decision plays in the officer analysis. Whether someone unilaterally issues a final decision is, of course, very important in the Appointments Clause analysis. The Supreme Court and SELA law said the power to unilaterally issue final decisions in administrative adjudications is a significant executive power. It's very important in the scope of the officer analysis. And then once you've established that you've, the officer has the last word authority, then the question often becomes whether they're inferior or a principal officer. Now, we would not argue these officers here in this case are principal officers because their jurisdiction is narrow. And the Supreme Court said that sort of the balance of the breadth of jurisdiction with the last word authority is relevant to inferior versus principal. That's not the world we're in, right? I will also say I think this issue is fixable. The government talks about suggesting that this would apply to a really broad set of officers. In my experience, I've only ever seen these administrative removals issued by either a field office director or an assistant field office director. There are only 25 ICE field offices in the country. So we're really talking about, you know, less than 100 people who the ICE secretary or the DHS secretary could sign a piece of paper with their names and then they're properly appointed. So the breadth of this issue is not a huge one. I will also say on the continuing authority, continuing duty issue, Freytag has said the fact that an inferior officer on occasion performs duties that may be performed by an employee not subject to the Appointments Clause does not transform a status. And in fact, many of the Appointments Clause cases over the years deal with people who do employee actions many days, but then also do inferior officer actions on others. I mean, doesn't it, just stepping back a bit, I mean, doesn't it seem odd to say someone's an officer yet, you know, there's no real position where someone's appointed. It's almost kind of ad hoc. Whoever's not busy, you know, hey, you come here. You can be the deciding officer. You know, it doesn't fit into any doctrinal analysis, but, you know, it doesn't seem that someone who exerts significant authority or is in a continuing position just seems intuitively very odd to consider someone like that if you have a kind of ad hoc job to be deemed an officer. I recognize the, you know, court's uncertainty with that. I'll say in my experience, this is not like a one removal a year these assistant field office directors or field office directors are doing. This is a core part of their job. They do other things too, but they do also issue final removal orders on behalf of the United States that are not subject to appeal to the attorney general, not subject to appeal to the BIA. In this limited jurisdiction area that they are regularly engaging in, this is a really important adjudication. I just kind of suggest that this is such a simple task that, you know, we can get anybody, you know, as long as it's not the issuing officer, whoever, you know, in the DHS can come in and complete this task. I mean, certainly the attorney general is optimistic it would be a simple task. I've often seen these administrative removal orders allege a conviction that turns out is not an aggravated felony. The robbery in this case is actually a great example, a second degree robbery in California has been subject to litigation for about the past decade. And it was only in 2019 that this court firmly said, okay, so it's not a crime of violence and that's what you alleged officer, but actually it's a theft offense that qualifies as an aggravated felony. And so it is very complicated and subject to lots of dispute that we regularly see, I regularly see in my practice. I would also just ask this court to look at ECU. I think the government is incorrect to say that those officers have substantially more authority than the officer here has. It's a very narrow set of grounds there too. I think it was four or five grounds of removal as opposed to every possible kind of aggravated felony. And the officer in that case did not do any additional evidentiary work, but the fact that he had that power was relevant. I will say at that time, the Supreme Court practice was very different. Briefs were brief. I think at the time, oral argument had been limited to three hours a party, which was a source of controversy. And so what is contained in the briefs is not the end all be all of what the arguments were. If the court does not have any further questions, thank you. We thank both sides for their argument. The case of United States versus Avalos is submitted.
judges: CLIFTON, IKUTA, LEE